UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DLM

MICHAEL KESELICA,
Petitioner

v.

A.T. WALL, RI COMMISSIONER OF CORRECTIONS
Respondent

Civil Action No. CA07-67T

PETITION FOR WRIT OF HABEAS CORPUS SUBSECTION 2241

NOW COMES Petitioner, Michael Keselica, pro se, and respectfully moves this Court, pursuant to 28 U.S.C.S. subsection 2241 (c)(3), to grant Petitioner's Petition for Writ of Habeas Corpus in the above referenced matter on the grounds that Petitioner is unlawfully detained at the Adult Correctional Institution in Cranston, Rhode Island on a Governor's Warrant of Rendition to the Commonwealth of Virginia and in support thereof states the following:

FACTS

SCANNED

On January 5, 2007, a hearing took place in Kent County Superior Court before Justice Vincent Ragosta on Petitioner's Writ of Habeas Corpus. The following statement of facts were agreed upon by parties and read into the record by the Court:

1. On January 17, 1995, Mr. Keselica was indicted by a grand jury of the Circuit Court of Fairfax County, Virginia on one count of embezzlement over \$200. The charge stemmed from Mr. Keselica's position as a financial advisor to a couple living in Virginia in 1990. From May 1, 1990 through November 30, 1990, Mr. Keselica obtained monies from this

couple via telephone for the purchase of stock. No stock was purchased and the monies were fraudulently converted to Mr. Keselica's personal use. At all times, Mr. Keselica was never physically in Virginia when these activities took place.

2. On February 8, 1995, Mr. Keselica pled guilty to felony embezzlement in the Circuit Court of Fairfax County, Virginia. On April 21, 1995, Mr. Keselica was sentenced to twelve years of incarceration with the Virginia Department of Corrections, with thirty months to serve and the balance suspended along with eight years of probation.

3. On June 16, 1995, this sentence was modified to two years to serve in work release along with restitution payments of one thousand dollars ($1000.00) per month. The total restitution in this matter was approximately sixty seven thousand dollars ($67,000).

4. On November 29, 1995, Mr. Keselica was paroled from incarceration and began serving the probationary period. Over the next four years, he made approximately $43,000 in restitution payments.

5. On September 17, 1999, Mr. Keselica was found in violation of his probation as a result of missing several restitution payments and for being untruthful to his probation officer. After hearing, Mr. Keselica was ordered to serve seven years of the remaining ten years suspended sentence. The balance of restitution, approximately $25,000, was converted to a judgment.

6. While Mr. Keselica was present in the Fairfax County Court for the violation of probation hearing, he was not present in Virginia during

O

the commission of the events that triggered the violation, namely failure to make restitution payments or being untruthful to his probation officer. The failure of Mr. Keselica to pay restitution took place while Mr. Keselica and his wife resided at 8332 Cottage Hill Court, Gaithersburg, Maryland from February, 1999 through October, 1999. The failure to be truthful to his probation officer took place telephonically while Mr. Keselica resided at this same address.

7. The Requisition Demand from Virginia also includes several additional violation of probation warrants alleging failure to pay restitution, failure to surrender, and failure to maintain telephone contact with his probation officer. During this time, November 1999 through June 2001, Mr. Keselica was residing in Maryland and was never present in Virginia during the commission of these alleged violations.

8. Mr. Keselica was released on an appeal bond pending appellate review of this matter. Mr. Keselica's appeal of this revocation hearing was later denied by the Virginia Court of Appeals. Mr. Keselica's appeal bond was returned by the Fairfax County Court on October 25, 2002.

9. On June 21, 2001, Mr. Keselica was arrested at his home in Montgomery County, Maryland as a fugitive from justice from Fairfax, Virginia for allegedly violating the terms of his Virginia probation. On July 20, 2001, this fugitive complaint was dismissed based upon Virginia's failure to obtain a governor's warrant within the required thirty day period.

10. On July 25, 2001, Mr. Keselica began serving a three year sentence in Maryland for violation of his Maryland probation. On December 31, 2001,

Fairfax County Court placed a second detainer on Mr. Keselica as a fugitive from justice for violation of probation. The basis of the detainer was the same violation of probation alleged in the June 21, 2001 complaint. This fugitive complaint was dismissed on February 17, 2004, again as a result of Virginia's failure to obtain a governor's warrant within thirty days.

11. On February 18, 2004, Mr. Keselica was arrested for the third time on the same fugitive complaint from Virginia. Mr. Keselica contested extradition by filing a petition for writ of habeas corpus in Maryland Circuit Court. The Maryland Circuit Court Judge granted Mr. Keselica's habeas petition and ordered him released from incarceration. No further attempts were made by Virginia to extradite Mr. Keselica from Maryland.

12. During the next two years, Mr. Keselica worked and resided in Maryland. He was employed full-time at Marketing Research and Resources, Inc. as a quality control supervisor. On June 3, 2006, Mr. Keselica's mother passed away; consequently, he moved to Rhode Island to help care for his father. Mr. Keselica is a native of Rhode Island. He graduated from Rogers High School in 1977 and received a bachelor of science degree from the University of Rhode Island in 1982. Within three days of moving to Rhode Island, Mr. Keselica obtained full time employment at Newport Specialty Foods in Middletown, Rhode Island.

13. On August 3, 2006, Mr. Keselica was returning from work when he was stopped by a Rhode Island State Trooper for a minor traffic violation. A National Criminal Identification Computer (NCIC) check revealed the

Virginia violation of probation warrant. Mr. Keselica was arrested and detained for the fourth time on this warrant. A governor's warrant was obtained on September 12, 2006 and Mr. Keselica was served with this warrant on October 5, 2006.

## PRIOR STATE PROCEEDINGS

On January 5, 2007, the Superior Court for Kent County, Rhode Island, Justice Ragosta presiding, denied Petitioner's Petition for Writ of Habeas Corpus. Pursuant to R.I.G.L. subsection 10-9-22, Petitioner filed a Petition for Writ of Habeas Corpus with the Supreme Court of Rhode Island.

On February 15, 2007, the Supreme Court for Rhode Island denied Petitioner's Petition for Writ of Habeas Corpus. Pursuant to 28 U.S.C.S. subsection 2241(c)(3), Petitioner filed a Petition for Writ of Habeas Corpus with this Honorable Court (See Exhibit 26).

## ARGUMENT I

### THE WRIT OF HABEAS CORPUS SHOULD BE GRANTED BECAUSE THE EXTRADITION PAPERS IMPROPERLY CHARACTERIZE THE PETITIONER AS A FUGITIVE FROM JUSTICE THEREBY DENYING RHODE ISLAND'S GOVERNOR HIS DISCRETIONARY AUTHORITY UNDER THE LAW TO DENY VIRGINIA'S REQUISITION DEMAND

The extradition of a fugitive from justice is mandated by Article IV, subsection 2 of the United States Constitution which reads in pertinent part:

"A person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up

to be removed to the state having jurisdiction of the crime."

The Uniform Criminal Extradition Act was adopted by Rhode Island in 1947 and is codified in R.I.G.L. subsection 12-9-1 et. seq. Under R.I.G.L. subsection 12-9-12, an alleged fugitive may test the validity of his or her arrest by applying for a writ of habeas corpus. The parameters of this test are "whether the petitioner is charged with a crime in the demanding state; whether the petitioner is in fact the person charged with this crime; whether the petitioner was in the demanding state at the time of the crime, left, and was found in the asylum state; and whether the requisition papers are in order." Brown v. Sharkey, 263 A.2d 104, 107 (R.I. 1970).

The Uniform Criminal Extradition Act provides two ways for a demanding state to secure the return of a defendant. The first is to claim that the defendant is a fugitive from justice, having committed a crime in the demanding state and fled from justice. Pursuant to R.I.G.L. 12-9-3, the Governor of Rhode Island must arrest and deliver to the demanding state all fugitives from justice:

> "Governor's duty to deliver fugitives from justice. Subject to the provisions of this chapter, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance of the Constitution, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state. R.I.G.L. subs. 12-9-3."

Under this section, the Governor of Rhode Island has discretion either to hold and to prosecute a person while that person remains a fugitive from justice in another state or to deliver the fugitive to the other state. State v. DeAngelis, 658 A.2d 7 (R.I. 1995).

O

If a defendant does not constitute a fugitive from justice, that is, if he committed an act or omission in another state resulting in a crime in the demanding state, his presence must be secured through R.I.G.L. subsection 12-9-8. This section reads as follows:

Surrender of persons committing act in one state resulting in crime in another. The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in the other state in the manner provided in subsection 12-9-4 with committing an act in this state or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, when the acts for which extradition is sought would be punishable by the laws of this state, and if the consequences claimed to have resulted from the crime in the demanding state had taken effect in this state. The provisions of this chapter, not otherwise inconsistent, shall apply to those cases, even though the accused was not in that state at the time of the commission of the crime and has not fled from that state; provided, that the governor of this state may, in his or her discretion, make any surrender conditional upon agreement by the executive authority of the demanding state that the person so surrendered will be held to answer no criminal charges of any nature except those set forth in the requisition upon which the person is so surrendered, at least until the person has been given reasonable opportunity to return to this state after his or her acquittal, if he or she shall be acquitted, or if he or she shall be convicted, after he or she shall be released from confinement. Nothing in subsections 12-9-7 and 12-9-8 shall apply to the crime of libel. R.I.G.L. subsection 12-9-8.

The distinction between these sections is significant. Under R.I.G.L. subsection 12-9-3, extradition of a fugitive from justice is mandatory. Our Governor has no discretion. Unlike subsection 12-9-3, our Governor has discretion

to extradite a non-fugitive under R.I.G.L. subsection 12-9-8.

Here, Deputy Commonwealth Attorney, Raymond Morrogh, submitted an affidavit upon which Virginia's Requisition Demand is based. See Exhibit 2, Virginia's Requisition Demand. That affidavit alleges Petitioner was in the state of Virginia when he violated the terms of his probation. This is false. Even though Petitioner was in Virginia for the revocation hearing, he was in Maryland when he failed to consistently pay restitution, to be truthful to the probation officer, and the subsequent allegations of violation. Petitioner also was never in Virginia for the crime he was convicted of. See Exhibit 1, discussed infra.

A proper requisition demand would have described the petitioner as a non-fugitive – an individual who committed an offense punishable by the laws of Virginia while outside of the state. If Virginia's Governor submitted a proper warrant, Petitioner's extradition would have been governed by R.I.G.L. subsection 12-9-8 and our Governor would have discretionary power to grant or deny the request for extradition instead of no discretion at all.

The Uniform Criminal Extradition Act makes no distinction between extradition for pending charges and extradition for violations of probation. The requirements of this title are not waived or reduced if the defendant has already been convicted and is wanted for violation of probation. R.I. G.L. 12-9-4, in describing the papers necessary for a valid extradition, makes this clear:

"... a copy of any warrant which was issued, upon the indictment or information, or by a copy of a judgment of conviction or of a sentence imposed in execution of the judgment, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his or her bail, probation, or parole." R.I.G.L. subsection 12-9-4.

The fact that extradition in this case is based upon violations of probation warrants does not render the inaccuracies of Virginia's requisition demand affidavit de minimus.

A similar case was recently decided by the Superior Court of Pennsylvania. In Commonwealth v. Livengood, 901 A.2d 556 (P.A. 2006), the state of West Virginia sought extradition of a resident of Pennsylvania on the basis of a criminal charge of stalking. The stalking charge stemmed from the defendant's telephone calls from Pennsylvania to the complainant who lived in West Virginia. West Virginia's requisition application incorrectly described the defendant as a fugitive from justice by "intentionally commit[ting] an act or acts in the state of West Virginia resulting in the crime [of stalking] in this State, has fled from justice from this State, and it has been represented to me that the accused is now to be found in the State of Pennsylvania." Id. at 559.

The Livengood court held that these inaccuracies rendered the Governor's warrant invalid under the Uniform Criminal Extradition Act. Id. at 559-60. The court reasoned that West Virginia sought extradition under the mandatory section of that act which states "it is the duty of the Governor of the Commonwealth to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime who has fled from that justice and is found in this Commonwealth." Mr. Livengood was not, however, a fugitive from justice as the warrant asserted. He was a non-fugitive and his extradition should have been left to the discretion of Pennsylvania's Governor. Instead, Pennsylvania's Governor signed the warrant "believing he was obligated to do so when in fact he had discretion" to deny extradition because the charges at issue stemmed from conduct that purportedly occurred outside of West Virginia. Id. at 560.

Similar to Livengood, Virginia is seeking extradition of Petitioner

as a fugitive from justice. See Exhibit 2. The requisition affidavit falsely asserts that Petitioner was present in Virginia when he committed the offense of violation of probation. Furthermore, Petitioner was never present in Virginia when he committed the offense of embezzlement. See Keselica v. Commonwealth, 480 S.E.2d 756 (1997). In re Hval, 537 A.2d 135, 137 (Vt. 1987) ("The crime referenced under [the UCEA] is not the 'crime' of probation violation, but is rather the original crime on conviction of which the probation was based in the requisitioning state."). However, all of the violation of probation charges stem from activity conducted by Petitioner while he was in Maryland, not in Virginia. See Exhibit 1. Because it was clear that Petitioner was a non-fugitive, Virginia should have pursued extradition through R.I.G.L. subsection 12-9-8 and not R.I.G.L. subsection 12-9-3. Had it done that, our Governor would have had the discretion subsection 12-9-8 affords him. Instead, Virginia is misleading the Governor of Rhode Island and obligating him to extradite Petitioner under subsection 12-9-3 by falsely characterizing him as a fugitive from justice when in fact he is not.*

For the foregoing reasons, the petitioner, Michael G. Keselica, respectfully requests this Honorable Court to grant his Petition for Writ of Habeas Corpus.

* Petitioner's probation was revoked before he was allowed to leave Virginia on an appeal bond and then Petitioner's appeal bond was returned to him before these extradition proceedings were instituted against Petitioner.

ARGUMENT II

DEPUTY COMMONWEALTH ATTORNEY RAYMOND MORROGH'S PERJURED REQUISITION AFFIDAVIT INVALIDATES BOTH VIRGINIA GOVERNOR KAINE'S REQUISITION WARRANT AND RHODE ISLAND GOVERNOR CARCIERI'S RENDITION WARRANT

In Deputy Commonwealth Attorney Raymond Morrogh's August 23, 2006 Requisition Affidavit (See Exhibit 3), there are intentional misstatements of material facts, in violation of subsection 18.1-273 of the Code of Virginia; Rhode Island General Law subsection 9-5-22; and United States Codes 18 subsection 1001 and 1621. Specifically, the following:

"In support of the said application I do hereby certify that:

(1). The full name of the fugitive for whom extradition is asked is Michael George Keselica, who was in the State of Virginia at the time of the commission of the said crime."

Mr. Morrogh knows this to be a false statement as:

(A). It was his Office that argued during my trial that, even though I was never in the State of Virginia to commit my crime, or any acts associated with my crime, they still had jurisdiction to prosecute me as the investigating detective succeeded in getting me to cross state lines into Virginia [under threat that if I didn't he would come to my house in Maryland and arrest me in front of my wife and two daughters];

(B). It was his Office that litigated this same argument all the way to the Virginia Supreme Court – I am now case law in Virginia on the fact that I was never in Virginia to commit my crime – Keselica v. Commonwealth, 480 S.E.2d 756 (1997).

(C). It was on this same argument – that I cannot be deemed a fugitive from justice, as I was never in the demanding state – that I successfully contested extradition on June 4, 2004 (as well as the fact that Mr. Morrogh's February 19, 2004 Requisition Affidavit (See Exhibit 4) contained perjured affirmations.

Mr. Morrogh knows that I was never in Virginia during the commission of a crime (or for any other alleged wrongful act – violation of probation or otherwise) but perjured

himself so that Virginia Governor Kaine would issue his Governor's Warrant to Rhode Island Governor Carcieri and so that Governor Carcieri would have to issue his Governor's Warrant, since I am wanted as a fugitive from justice — Governor Carcieri does not have the discretion to not honor Virginia's Requisition Warrant if I am labeled a fugitive from justice versus a non-fugitive, where Governor Carcieri does have the discretion to issue his Warrant or not (See Argument I).

(5). "No other application has been made for a requisition for the said fugitive growing out of the same transaction herein alleged."

This is not the first time that a Requisition Affidavit has been submitted by the Office of the Commonwealth Attorney for Fairfax County, Virginia to the Virginia Governor for my extradition arrest on the same transaction alleged by the Office of the Commonwealth Attorney.

Mr. Morrogh Knows this to be a false statement as it was Mr. Morrogh who swore out a previous Requisition Affidavit on February 19, 2004) for my extradition arrest (See Exhibit 4). This is actually the third time that Mr. Morrogh's office has presented a Requisition Affidavit to the Virginia Governor for my extradition arrest (Mr. Morrogh's boss, Robert Horan, submitted a Requisition Affidavit to the Virginia Governor for my arrest back on July 3, 2001 (See Exhibit 5)).

Why is Mr. Morrogh lying about this material fact?

(A). The Virginia Governor would then have the discretion to inquire as to what happened the first and second times and possibly decline to issue a Governor's Warrant for the third time.

(B). It circumvents the admission of a crime by Mr. Morrogh:

"Every person who either solely or as a member of a court knowingly and unlawfully recommits, imprisons, or restrains of his liberty, for the same cause, any person who has been discharged upon a writ of habeas corpus, is guilty of a misdemeanor."

(C). If Mr. Morrogh doesn't lie about this material fact (first time versus third time) I would then be eligible for discharge based on the principle of

double jeopardy/collateral estoppel or res judicata (See Arguments 5 and 7).

(8). "The nature of the crimes with which the said fugitive is charged are Violation of Probation on an original charge of Embezzlement and a Show Cause why his suspended sentence should not be imposed."

This is not true as Mr. Morrogh knows very well that the Circuit Court for Fairfax County, Virginia is attempting to extradite Petitioner to finish serving a 7 year sentence (See Exhibit 6 – Transcript of August 9, 2004 hearing in the Circuit Court for Fairfax County, Virginia where Judge Klein states that Petitioner is wanted back to finish serving a 7 year sentence).

This fact has been stated in open court, not only in the Circuit Court for Fairfax County, Virginia, but by Rhode Island Assistant Attorney General John Corrigan and Kent County Superior Court Judge Vincent Ragasta (based on representations made to this Court by Mr. Corrigan) on several occasions, most recently on January 5, 2007 (See Exhibit 7 – Transcript of January 5, 2007 habeas hearing) and to the Supreme Court of Rhode Island by Rhode Island Assistant Attorney General Christopher Bush on January 30, 2007 (See Exhibit 8). Furthermore, Petitioner does not have a suspended sentence to serve. When Petitioner's probation was terminated on September 17, 1999, Petitioner's suspended sentence was imposed.

Why is Mr. Morrogh lying? Because he knows that if he states the correct reason behind Virginia's extradition request – for Petitioner to finish serving a seven year sentence – Petitioner cannot be deemed a fugitive from justice because Virginia allowed Petitioner to return to Maryland on an appeal bond and then returned Petitioner's appeal bond to him without requesting or requiring Petitioner to return to Virginia to finish serving a 7 year sentence. Virginia waived jurisdiction over Petitioner and Mr. Morrogh knows this. (See Exhibit 11 – see also Argument VI).

Therefore, if Petitioner is not wanted as a fugitive from justice, Rhode Island Governor Carcieri does not have to have Petitioner arrested – it's discretionary. If Petitioner is wanted as a fugitive from justice, Governor Carcieri must issue his Governor's Warrant for Petitioner's arrest.

Furthermore, if Mr. Morrogh correctly states why Petitioner is being sought, now, it affirms that the Circuit Court for Fairfax County, Virginia sought Petitioner's [extradition] return in 2001 and 2004 under false pretenses and opens the door for the crediting to Petitioner of these days spent in jail contesting extradition on a false warrant.

(2). "In my opinion, the ends of public justice require that the said fugitive be brought to this State for trial, at the public expense."

Same argument as in #8 above. Petitioner had his trial on February 8, 1995 and his violation of probation hearing on September 17, 1999. Virginia is attempting to bring Petitioner back to finish serving a 7 year sentence.

(3). "In my opinion, I have sufficient evidence to secure the conviction of the said fugitive."

Same argument as in #8 above. Petitioner was convicted of the original charge of Embezzlement on February 8, 1995 and of violating his probation on September 17, 1999.

As stated by the United States District Court for the Eastern District of Virginia in the extradition case of Ex parte Slauson, 73 F. 666 (1896):

"The affidavit by which he charged the fraud is a flagrant perjury. His prosecution of this extradition proceeding is malicious. The governor of Tennessee was deceived, and the requisition which he issued for Slauson was improvidently granted. The governor of Virginia was not advised of, and had no means of testing the truth of, the allegations of the requisition."

The Slauson Court held that since the requisition was improvidently issued, Slauson should be discharged on habeas corpus.

In the present case before this Court, Governors Kaine and Carcieri were duped into signing their respective Governors' Warrants by a [requisition] affidavit that is a flagrant perjury. Messieurs Morrogh and Corrigan's prosecution of this extradition proceeding is malicious and criminal. The Governor of Virginia was deceived (for the 3rd time) and the requisition he issued for Petitioner was improvidently granted. The Governor of Rhode Island was not advised of, and had no means of testing the

truth of, the allegations of the requisition, as his execution of the Governor's Rendition Warrant was mandatory—he had no discretion, as Petitioner was [falsely] labeled a fugitive from justice from Virginia.

As an afterthought to #5, even the Rhode Island Assistant Attorney General (John Corrigan) prosecuting the extradition case of Petitioner here in Rhode Island admitted to the Rhode Island Courts (See Exhibit 9) that this is actually the 4th time a Requisition Affidavit has been submitted to the Governor of Virginia for the same cause but rationalized to the Rhode Island Courts that any statement to the contrary was a non-prejudicial clerical mistake by the Virginia prosecutor.

"A state should take care, within the limits of the law, that the rights of its people are protected against illegal action." Appleyard v. Massachusetts, 203 U.S. 222; 27 S.Ct. 122 (1906)

One of the requirements under the Uniform Criminal Extradition Act is that the requisition papers be in order and facially valid. See Brown v. Sharkey, 263 A.2d 104, 107 (R.I. 1970). See also, Ex Parte Slauson, 73 F. 666 (1896) (writ of habeas to issue when extradition warrant is based upon perjurious affidavit).

Since Virginia's Requisition Demand Affidavit contains false statements which invalidate it under R.I.G.L. subsection 12-9-1 et. seq., the Governor's Warrant should be invalidated and the writ of habeas corpus granted.

"As the record confirms that the Governor's warrant was issued based upon misstatements of fact contained in the application for requisition, we conclude that the proceedings at issue were not conducted in accordance with the law of this Commonwealth." Commonwealth of Pennsylvania v. Livengood, 901 A.2d 556 (2006).

It is quite apparent from the facts provided above that the requisition was both insufficient and blatantly false to justify issuance of the fugitive warrant and Governor's warrant and Petitioner should be released.

In Michigan v. Doran, 439 U.S. 282, 99 S.Ct. 530 (1978) the United States Supreme Court expressed the view that the Fourth Amendment applies in the extradition context.