ARGUMENT III

PETITIONER IS NOT A FUGITIVE FROM JUSTICE

FROM THE COMMONWEALTH OF VIRGINIA

Rhode Island Governor Donald Carcieri's Warrant of Rendition served upon Petitioner on October 5, 2006 raises a presumption that the accused is the fugitive wanted, and it is sufficient to justify his arrest, detention and delivery to Virginia. In order to rebut this presumption, the accused must prove beyond a reasonable doubt either that he was not present in Virginia at the time of the crime, or that he is not the person named in the warrant.

Whether person sought under requisition for extradition is fugitive from justice of demanding state is a question of fact. If an inmate is not a fugitive from justice, within the meaning of the Constitution and statutory law, he is entitled to be discharged. A fugitive from justice is necessarily one who, being charged with crime in the demanding state, has fled therefrom. South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667 (1933); Illinois ex rel. McNichols v. Pease, 207 U.S. 100, 28 S.Ct. 58; Roberts v. Reilly, 116 U.S. 80; 6 S.Ct. 291 (1885).

Virginia's requisition application and Virginia Governor Timothy Kaine's Requisition Warrant state that Michael George Keselica is a fugitive from justice, having violated the terms of his probation in Virginia and thereafter fled from the justice of this state and may have taken refuge in the State of Rhode Island.

Rhode Island Governor Donald Carcieri's Rendition Warrant states that: Michael George Keselica convicted with the crime of "Crime Fugitive Charged With" represented to be a Fugitive From Justice.

Furthermore, Virginia's requisition application goes on to state in paragraph 1 that Michael George Keselica was in the State of Virginia at the time of the commission of the said crime.

Petitioner can prove beyond a reasonable doubt that he is not, has never been, a fugitive from justice from the Commonwealth of Virginia.

On February 8, 1995, after a jury trial and the denial of Petitioner's motion to dismiss for lack of jurisdiction (Petitioner never set foot in Virginia to commit a crime)[1], Petitioner was convicted of one count of embezzlement in Fairfax County, Virginia.

As affirmed by the Court of Appeals and the Supreme Court for Virginia, in Keselica v. Commonwealth, 24 Va App 115, 480 S.E. 2d 755 (1997):

"the record established that appellant, while located in Maryland, set in motion a scheme intended to produce and which did produce immediate detrimental effects in Virginia..."

The Virginia appellate courts further opinioned that even though Petitioner never crossed state lines from Maryland into Virginia, Virginia has jurisdiction to try and convict Petitioner of embezzlement pursuant to Strassheim v. Daily, 221 U.S. 280, 285 (1911):

"Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."[1] (However, as cited in People ex rel Merklen v. Enright, 217 A.D. 514; 217 N.Y.S. 288 (1926), quoting the U.S. Supreme Court in Daily: "Of course we must admit that it doesn't follow that Daily is a fugitive from justice. It is established in the law of rendition that while a person may be punished for acts committed without the State producing detrimental effects within it, the power to extradite, as distinguished from the power to prosecute and punish, rests wholly upon subs. 2 of section 2 of article 4 of the U.S. Constitution. It is held not to exist where the demanding State bases jurisdiction upon constructive rather than actual presence within its border at the time of the commission of the alleged offense.")

and the "Results Theory": "that a state may punish someone for acts done outside its borders where the acts were intended to produce and actually produced detrimental effects within the state." (The exercise of jurisdiction by a State to make an act

[1] Virginia succeeded when Petitioner, under threat by the investigating detective that he would come to Petitioner's house in Maryland and arrest him in front of his wife and two daughters, came across state lines to turn himself in to the investigating Virginia detective.

committed outside its borders a crime against the State is one thing, but to assert that the party committing such an act comes under the Federal statute, and is to be delivered up as a fugitive from justice of that State, is quite a different proposition. See Hyatt v. People ex rel. Corkran, 188 U.S. 691, 23 S.Ct. 456 (1903)).

Clearly if Virginia is extraditing Petitioner under the pretext that the commission of Petitioner's crime occurred in Virginia — a fugitive extradition, then this would be a totally false statement and extradition as affirmed by the Virginia appellate courts — the extradition would have to be under the non-fugitive provision of the Uniform Criminal Extradition Act.

> "One who was not within a state when the crime of larceny or false pretense was, if ever, committed therein, cannot be deemed a "fugitive from justice" within the meaning of U.S. Rev. Stat. 5278, providing for the interstate extradition of a fugitive from justice on demand of the executive of the state from which he has fled." Hyatt v. People ex rel. Corkran, 188 U.S. 691; 23 S.Ct. 456 (1903).

Therefore, there is proof, "beyond a reasonable doubt," that Petitioner was not, as stated by Deputy Commonwealth Attorney Raymond Morrogh in paragraph 1 of his requisition application, "in the State of Virginia at the time of the commission of the said crime" and consequently the extradition of Petitioner as a fugitive from justice, as cited in Virginia Governor Kaine's Requisition Warrant and Rhode Island Governor Carcieri's Rendition Warrant, is illegal.

Furthermore, Petitioner is not a fugitive from justice from Virginia for violating the terms of his probation and thereafter fleeing from the justice of that State and taking refuge in the State of Rhode Island, as cited in Virginia Governor Kaine's Requisition Warrant.[2]

On September 17, 1999, Petitioner appeared in the Circuit Court for Fairfax County, Virginia for a show cause hearing for two alleged violations of Petitioner's probation: (1) failure to pay restitution and (2) failure to be truthful to his Maryland probation officer. This show cause hearing was to be continued but said motion was denied by the trial court. Petitioner was found guilty of

[2] It is important to note that R.I. Governor Carcieri's Rendition Warrant never mentions this fact — that Petitioner is wanted for violating the terms of his probation — see Argument IV.

[3] Petitioner's attorney had requested a continuance through Petitioner's VA probation officer who failed to convey this request to the trial court. As a result, Petitioner did not bring any documents to prove that his violations were not willful and Petitioner was denied the opportunity to present those documents after Petitioner went back to MD to retrieve them during the lunch recess

failure to pay restitution, even though the - Circuit Court for Montgomery County, Maryland was demanding all of Petitioner's earnings to pay restitution there; and Petitioner was found guilty of failure to be truthful to his Maryland probation officer regarding travel instructions from Maryland to Rhode Island, even though Petitioner was found not guilty on this same violation the month previous in the Circuit Court for Montgomery County, Maryland.

Petitioner's probation was subsequently terminated, his restitution reduced to a judgment and Petitioner was sentenced to seven (7) years in the Virginia Penitentiary (See Exhibit 10). One week later, Petitioner was released on a $7500 cash appeal bond, contingent upon such time as the Court of Appeals renders a decision (See Exhibit 11).

Therefore, Petitioner was no longer on probation in Fairfax County, Virginia after September 17, 1999 and then only on probation in Montgomery County, Maryland thereafter. This fact has been affirmed countless times through:

1. The November 28, 2000 decision of the Court of Appeals of Virginia affirming the revocation of Petitioner's probation by the Circuit Court for Fairfax County, Virginia. See Keselica v. Commonwealth, 34 Va App 31 (2000)
2. The Office of the Attorney General for the Commonwealth of Virginia's November 19, 2002 letter to U.S. District Court Clerk Elizabeth Paret regarding the 1999 revocation of Petitioner's probation (See Exhibit 12) and subsequent briefs in Keselica v. Stouffer, civil action no. 3:02cv575.
3. The February 18, 2004 Order of the U.S. District Court for the Eastern District of Virginia holding "that the record does not reflect that Petitioner was returned to supervised probation following his 1999 revocation proceeding," in Keselica v. Stouffer, civil action no. 3:02cv575. (See Exhibit 13).

Prior to the September 17, 1999 revocation of Petitioner's probation in Virginia case no. K87970, Petitioner was on supervised probation in both Montgomery County, Maryland and Fairfax County, Virginia, while a resident of Montgomery

County, Maryland[4] — Petitioner has been a resident of Montgomery County, Maryland since July 1985.

After the revocation of Petitioner's probation in Fairfax County, Virginia, Petitioner was incarcerated at the Fairfax County Detention Center for six (6) days before his release on an Appeal Bond (See Exhibit 11).

The conditions of the Appeal Bond stated that:

> "[the] Bond is contingent until such time as the Court of Appeals renders a decision."

The home address for Petitioner on the Appeal Bond is the same Montgomery County, Maryland address which was listed for Petitioner on the June 28, 1999 Fairfax County, Virginia Show Cause Order; the June 6, 2001 Show Cause Bench Warrant; the Amended June 6, 2001 Show Cause Bench Warrant; and the August 16, 2004 Bench Warrant.

Furthermore, the Fairfax County, Virginia Appeal Bond allowed Petitioner to leave that State during the pendancy of his appeal:

> "I understand I may leave the Commonwealth of Virginia until my case and my appeals in my case (emphasis added) are finished."

Currently, Petitioner's appeal of the September 17, 1999 revocation of his Fairfax County, Virginia probation (case no. K87970) is at the United States District Court for the Eastern District of Virginia, No. 07-104 and Civil Action No. 3:02cv575.

Additionally, Petitioner's Appeal Bond was returned on November 18, 2002. Thus, Virginia waived, forfeited or relinquished any jurisdiction they may have held over Petitioner after the Court of Appeals for Virginia rendered their opinion on November 28, 2000 (see Exhibit 14).

Despite a previous conviction in the demanding state (Virginia), has Virginia not bindingly waived their right to extradite Petitioner as a fugitive from justice, when

[4] The Circuit Court for Fairfax County, Virginia would not let Petitioner transfer his probation to Montgomery County, Maryland where Petitioner resided with his wife and daughters after the imposition of Petitioner's sentence on April 25, 1995 (See Exhibit 15)

O

Virginia voluntarily returned Petitioner's Appeal Bond on November 18, 2002?

Waiver is concisely defined as the "voluntary relinquishment of a known right. Waiver is a doctrine of very broad and general application. It concedes a right, but assumes a voluntary and understanding relinquishment of it. "It is a voluntary act, and implies an election to dispense with something of value, or to forego some advantage which she (Virginia) might at her option have demanded and insisted on."

Petitioner let it be known that he was contesting extradition to Virginia as a fugitive from justice on a violation of probation show cause bench warrant in June 2001 (see Exhibit 5) before Petitioner's appeal bond was returned. There was no default judgment entered against Petitioner thereafter.

Petitioner was then mysteriously arrested as a fugitive from justice in Rhode Island on August 6, 2006 on Fairfax County, Virginia's same violation of probation show cause bench warrant and subsequently contested extradition, as Petitioner was both neither on probation in Virginia at that time, nor a fugitive from justice.

How can Petitioner be a fugitive from justice, pursuant to Virginia Governor Kaine's Requisition Warrant[5] from the Commonwealth of Virginia for violating the terms of his probation and thereafter fleeing from Virginia and then taking refuge in Rhode Island, when the facts say otherwise? He can't be. "Whether person sought under under requisition for extradition is fugitive from justice of demanding state is a question of fact." (See Exhibit 1) Roberts v. Reilly, 116 U.S. 80

Governor Carcieri's Warrant of Rendition raises the presumption that this Petitioner is the fugitive wanted and it is sufficient to justify Petitioner's arrest, detention and delivery to Virginia.

However, Petitioner has rebutted this presumption by proving "beyond a reasonable doubt" (as Petitioner had done in Maryland on June 4, 2004) that he was not in

[5] Rhode Island Governor Carcieri's Rendition Warrant only states that Petitioner is a fugitive from justice from Virginia - it doesn't state the reason why, only that Petitioner was convicted of "CRime Fugitive Charged With".

Virginia[1] at the time of the commission of the crime; (2) not present at the time he was on probation (11/29/95 – 9/17/99); (3) nor was Petitioner present in Virginia at the time of the events alleged in Virginia's Amended June 6, 2001 violation of probation bench warrant; but, more to the point, (4) Petitioner was not on probation in Virginia at any time after September 17, 1999 – in habeas corpus proceeding involving extradition, courts cannot consider question of whether or not Petitioner is guilty of violating probation but only if the Petitioner was on probation and therefore a fugitive from justice (see Treseder v. Remann, 165 Wash. 92, 4 P.2d 866 (1931)).

"We consider it to be Hornbook law that a convicted individual may be extradited as a fugitive when he, prior to the revocation of parole, seeks asylum in the state from which he is sought to be extradited." Travis v. People, 135 Colo. 141, 308 P.2d 997 (1957).

One week after Petitioner's probation was revoked he was given permission to leave Virginia. The crime for which extradition is sought is not Petitioner's failure to appear according to promise or bond.

Thus, Petitioner has overcome the presumption raised by the extradition proceeding that he was a fugitive from justice, as Petitioner has met the burden of showing that he was not in the demanding state for the commission of any probationary act or crime and if at anytime he was present, he was given permission to leave and Virginia waived the requirement that Petitioner return.

Petitioner is not a fugitive from justice as affirmed by the following cases: Hyatt v. People ex rel Corkran, 188 U.S. 691, 23 S. Ct. 456 (1903) (The Court held that defendant in error's claim that he was absent from Tennessee when the crimes occurred was uncontradicted. The Court further held that mere constructive presence in the demanding state was not sufficient for extradition under subsection 5278. The Court also held that because the jurisdictional prerequisite of presence in the demanding state at the time of the offense was lacking, defendant in error was entitled to be discharged.)

Flight – being a fugitive from justice – is a jurisdictional fact (See Argument VI).

South Carolina v. Bailey, 289 U.S. 412; 53 S. Ct. 667 (1933) (held that it could not approve the discharge of the accused absent evidence in the record that he

succeeded in showing by clear and convincing evidence that he was outside the limits of South Carolina at the time of the crime and thus could not be a fugitive from justice) - See Exhibit 1.

Ex parte Trignani, 80 A.2d 371, 373 (1951) (A paroled convict leaving the state even by consent of the paroling authority becomes, on revocation of such parole, a fugitive from the justice of that state within the meaning of U.S. Const. art IV, subs. 2 and the extradition statutes executing it. 18 U.S.C.S. subsection 3182) - Petitioner's probation was revoked before he left the state, with the consent of the trial court on an appeal bond.

People ex rel. McNichols v. Pease, 207 U.S. 100, 28 S.Ct. 58 (1907) (The fact that the person demanded is a fugitive from justice is a jurisdictional prerequisite to an extradition warrant. The governor upon whom the demand is made has no authority to issue his extradition warrant, unless competent proof has been made to him that the person demanded was within the jurisdiction of the demanding State at the time of the commission of the crime in question and subsequently fled therefrom.)

How can Petitioner be labeled a fugitive from justice for the purpose of extradition on an August 16, 2004 Violation of Probation Show Cause Bench Warrant (See Exhibits 16 & 17) when: (1) Petitioner's term of probation expired on November 29, 2003; (2) Petitioner's probation was revoked by Final Order of the Virginia Court on October 22, 1999; (3) Petitioner was never in the demanding state (Virginia) to commit the alleged acts which violated Petitioner's probation; and (4) Petitioner had already successfully contested extradition to Virginia as a fugitive from justice on this VOP Show Cause Bench Warrant (see Exhibits 18 & 19)? Petitioner can't be.

And if we disregard what Virginia's Requisition Affidavit and Governor's Requisition Warrant state Petitioner is wanted for — a VOP Show Cause Hearing (we don't know what RI Governor Carcieri's Rendition Warrant states Petitioner is wanted for - See Argument IV) and go along with what the Virginia trial court; the Superior Court for Kent County, Rhode Island; and the Office of the Attorney General for Rhode Island have stated in open court and in subsequent

court briefs – that Petitioner is wanted to finish serving a 7 year sentence imposed on September 17, 1999, then how can Petitioner be labeled a fugitive from justice to serve this sentence when: (1) Virginia is the one who released Petitioner on this 7 year sentence to an appeal bond and then returned Petitioner's appeal bond without requiring Petitioner to return to Virginia to serve this 7 year sentence; (2) this 7 year sentence expired on September 17, 2006; (3) Petitioner already conclusively proved that he was not a fugitive from justice from Virginia on June 4, 2004; (4) Virginia never sought Petitioner's re-arrest in Maryland after Petitioner's habeas release on June 4, 2004; and (5) Petitioner never sought Petitioner's appearance in Virginia after Petitioner's appeal was denied by the Court of Appeals of Virginia on November 28, 2000 pursuant to the terms of Petitioner's appeal bond.

"When a person secures his liberty through some illegal or void means, he is a fugitive from justice and can be retaken and compelled to complete his sentence, even though the time in which the original sentence should have been served has expired." Hopkins v. North, 151 Md 553, 135 A. 367 (1926)

Petitioner did not secure his liberty through some illegal or void means. Virginia released Petitioner on an appeal bond which they returned to Petitioner. Petitioner did not default on this appeal bond.

In extradition proceedings this Court is controlled by the constitution of the United States and the act of Congress passed pursuant thereto, and are bound by the decisions of the Supreme Court of the United States on the question here involved.

In Grogan v. Welch, 55 S.D. 613; 227 N.W. 74 (1929): "The matter of interstate rendition being federal in its nature, the decisions of the Supreme Court of the United States with reference thereto, as with reference to other federal matters, are binding upon this court."

The six (6) U.S. Supreme Court cases cited by Petitioner above, validate Petitioner's position that he is not a fugitive from justice and therefore Petitioner's Writ of Habeas Corpus must be granted.

ARGUMENT III

THE EXTRADITION DOCUMENTS ARE TECHNICALLY DEFICIENT

Everybody has stated it. From R.I. Ass't A.G. Christopher Bush to the Supreme Court of R.I. (See Ex. 8); R.I. Ass't A.G. John Corrigan to the Kent County Superior Court (See Ex. 9) and consequently Kent County Justice Vincent Ragasta (See Ex. 7) and finally Fairfax County Circuit Court Judge Stanley Klein to Petitioner's Virginia attorney at an August 9, 2004 hearing (See Ex. 6). Petitioner is wanted in Virginia to finish serving a seven (7) year sentence imposed on September 17, 1999. Everybody, that is, except those that count in these extradition proceedings - Deputy C.A. Raymond Morrogh, who submitted the requisition affidavit to initiate the extradition proceedings against Petitioner (See Ex. 3) and Virginia Governor Timothy Kaine who submitted his Requisition Warrant to R.I. Governor Donald Carcieri for Petitioner's arrest (See Ex. 2). These primary parties have represented to R.I. Governor Carcieri, via their requisition affidavit and warrant, that Petitioner is wanted in Virginia for a VOP Show Cause hearing, not to finish serving a 7 year sentence.

Why there is a conflict between what Virginia's Requisition Affidavit and Governor's Warrant is stating Petitioner is wanted for, versus what the Office of the A.G. for R.I., the R.I. Courts and the Virginia trial court is stating Petitioner is wanted for is Deputy C.A. Morrogh's failure to specify the manner, place, or time by which Petitioner's crime was committed. Application of Burgher, 134 NYS.2d 435 (1954) (affidavit failing to state any of the essential facts of the crime, or the manner, place, or time in which the crime was committed, held insufficient). See also VA Code Ann. subs. 19.2-109: "... in which application (requisition affidavit) shall be stated the name of the person so charged, the crime charged against him, the approximate time, place and circumstances of its commission..."

Therefore, the extradition documents are technically deficient for this reason and the reasons cited below.

"Here the original requisition was insufficient because the demand recited as its jurisdictional basis that relator stood charged of a crime by virtue of a complaint and warrant, whereas a supporting affidavit showed that he had been convicted of the crime and broken the terms of his bail, which is a separate jurisdictional basis. Relator was discharged therefore, not because the court decided he was not a fugitive from justice, but because the contradiction of jurisdictional bases between the demand and the supporting papers constituted a nonobservance of the form required by law for his extradition."

People ex rel. Ritholz v. Sain, 26 Ill. 2d 455; 187 N.E. 2d 241 (1962).

In Petitioner's extradition case, the discrepancy between the demand submitted by Virginia Governor Kaine – Petitioner is wanted as a fugitive from justice for a violation of probation show cause bench warrant and the supporting papers cited by the Rhode Island prosecutors and Rhode Island Judges as the basis for Virginia's demand – Petitioner is wanted to serve a 7 year sentence, invalidates this extradition proceeding, as it constitutes a nonobservance of the form required by law for Petitioner's extradition.

As stated in Kirkland v. Preston, 128 U.S. App D.C. 148, 385 F.2d 670 (1967):

> "The law appreciates the hardship which extradition can involve: not only the suppression of one's liberty, but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home. The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition."

For the sake of repetition, Petitioner incorporates, in their entirety, the facts of Arguments I, II and III, in Petitioner's Argument IV.

Argument I reflects the misapplication by both the Virginia Governor's Requisition Warrant and the Rhode Island Governor's Rendition Warrant of the fugitive statute of the Uniform Criminal Extradition Act in seeking Petitioner's extradition to Virginia.

Petitioner's extradition and the related Governor's Warrants should follow the non-fugitive provision of the U.C.E.A. as:

(1) Petitioner never set foot in Virginia during the commission of the original crime of embezzlement – See Keselica v. Commonwealth, 480 S.E. 2d 756 (1997)

(2) Petitioner never set foot in Virginia to commit the acts to allegedly violate his probation.

They don't, therefore, the extradition documents (both Governor's Warrants and Requisition Affidavit) are technically deficient.

Argument II reflects the fact that Virginia Governor Timothy Kaine's Requisition Warrant is invalid (and therefore Rhode Island Governor Donald

Carcieri's Rendition Warrant) because it was issued based on a perjured requisition affidavit submitted by Deputy Commonwealth Attorney Raymond Morrogh.

"Certification by Governor, demanding return of fugitive, of documents required by statute as authenticated, is sufficient to extradition in absence of showing that documents are "spurious." 18 U.S.C.A. subsection 662.

"In absence of a showing that documents for extradition purposes "certified as authentic" by Governor of Kansas were spurious, certification by Governor of Kansas was sufficient for extradition purposes." Travis v. People, 135 Colo. 141, 308 P.2d 997 (1957).

Mr. Morrogh's Requisition Affidavit is more than "spurious" – it's perjured.

Argument III re-affirms the fact that Petitioner is not a fugitive from justice for the following facts:

1. Petitioner never set foot in Virginia for the commission of the crime of Embezzlement.
2. Petitioner never set foot in Virginia to commit any of the acts alleged to have violated the terms of his probation.
3. Petitioner's probation was terminated by Order of the Court on September 17, 1999.
4. Petitioner's probation expired on November 29, 2003.
5. Petitioner's 7 year sentence expired on September 17, 2006.

"The fact that the original crime was committed in the demanding state, and not the later probation violation, is controlling for extradition purposes; thus, there is no constitutional requirement that the probation be shown to have committed an additional crime while he was considered to be a fugitive." Ingram v. Dodd, 243 Ga 788, 256 S.E.2d 778). Both Petitioner's original crime and violation of probation were not committed in the demanding state – Virginia.

Therefore, if Virginia had any extraditable claim to Petitioner, Virginia had to seek enforcement of such claim under the non-fugitive provision of the Uniform Criminal Extradition Act (See also Argument I)

As stated in Duer v. Sheriff of the County of Newaygo, 420 Mich. 440; 362 N.W.2d 698 (1985):

"there is no obligation to make certain that the requirement be met that the extradition statute be satisfied before permitting one to be surrendered to the executive authority of another state. In this case, it is apparent from the facts that Mr. Duer did not commit any act in the State of Michigan intentionally resulting in the crime with which he is charged in the State of Maryland. The requirements for valid extradition under that statute

not having been met, we vacate the Court of Appeals order discharging the writ of habeas corpus. The writ is reinstated."

Dutil v. Rice, 34 Conn. Sup. 78, 83, 376 A.2d 1119 (1977) (held a rendition warrant void if the accused, requested as a fugitive or non-fugitive, proves in a habeas corpus proceeding that his status does not actually conform to the status indicated on the extradition papers).

The "status" indicated in the extradition documents is that Petitioner is a fugitive, however, Petitioner has proven beyond any doubt that his status should have been designated as a non-fugitive (see also Arguments I and III).

Furthermore, Virginia has never attempted to Amend either its Requisition Affidavit or Governor's Warrant.

Therefore, the extradition documents are deficient, not only because they seek Petitioner's rendition as a fugitive (versus non-fugitive), but Virginia's requisition affidavit and Governor's Warrant seeks Petitioner's return for a violation of probation hearing (versus the completion of a 7 year sentence).

Finally, and most importantly, Rhode Island Governor Donald Carcieri's Rendition Warrant, the extradition document that has caused Petitioner to be arrested and detained as a fugitive from justice, is facially defective and therefore facially void or invalid. See R.I. Const. Art. 1, subs. 10 and State v. Campbell, 196 A.2d 131, 97 R.I. 111 (to be valid, the offense charged must be informative on its face).

Governor Carcieri's Rendition Warrant does not state the crime Petitioner is wanted for as a fugitive from justice by Virginia (see Exhibit 20). Governor Carcieri's Rendition Warrant states Petitioner is convicted with the crime of "Crime Fugitive Charged With." "Crime Fugitive Charged With" is not a crime. "One of the requirements under the U.C.E.A. is that the requisition papers be in order and facially valid." Brown v. Sharkey, 263 A.2d 104, 107 (R.I. 1970).

In common law a perjured police Application for Statement of Charges (See also Argument II) results in the dismissal of charges against a Defendant as a result of a Fourth Amendment violation. The same legal principle applies to this case, Keselica v. Wall. The fugitive complaint against Petitioner must be dismissed and Petitioner released for this reason and the others documented by Petitioner above.

ARGUMENT V

PETITIONER'S CURRENT EXTRADITION PROCEEDING IS IN VIOLATION OF PETITIONER'S FIFTH AMENDMENT GUARANTEE AGAINST DOUBLE JEOPARDY

In Ashe v. Swenson, 397 U.S. 436; 90 S.Ct. 1189 (1970), the Supreme Court of the United States concluded that collateral estoppel, or issue preclusion, was part of the guarantee under U.S. Constitutional Amendment V against double jeopardy.

"Collateral estoppel" means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future proceeding, provided the following criteria are met:

(a) the issue decided in the prior adjudication is identical with the one presented in the later action;

- Is Petitioner a fugitive from justice for violating the terms of his probation?
- Already decided on June 4, 2004 (see Exhibit 18)

(b) there is a final judgment on the merits;

- The granting of Petitioner's Writ of Habeas Corpus on June 4 2004 (see Exhibit 16)

(c) the party against whom the doctrine is asserted was a party or in privity with a party to the other action;

- Virginia.

(d) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in the prior action; and,

- Petitioner's habeas hearing on June 4, 2004 in the Circuit Court for Washington County, Maryland offered Virginia the opportunity to fully and fairly litigate the issue in question in the prior action — fugitive from justice for violating probation.

(e) the issue decided was essential to the judgment.

- Petitioner had to prove that he was not a fugitive from justice in order to have been granted his release on a Writ of Habeas Corpus.

Therefore, pursuant to the doctrine of "collateral estoppel," or issue preclusion,

Petitioner's current habeas extradition proceeding in Rhode Island must be dismissed as all material issues to this current extradition proceeding were fully and fairly litigated in Maryland on June 4, 2004. Virginia does not get two bites of the apple. (this is actually their 4th bite).

The Double Jeopardy Clause is a guarantee "that the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." Green v. United States, 355 U.S. 184, 187 (1957).

"For apprehension of a fugitive under Section 3182 is plainly a criminal arrest since it deprives him of his liberty for the purpose of insuring his presense at a criminal trial." Matter of Strauss, 197 U.S. 324, 25 S. Ct. 535 (1905) (See Ex. 21)

Petitioner was initially arrested as a fugitive from justice from Virginia upon a violation of probation show cause bench warrant, on June 21, 2001, in Maryland. Denied bail, Petitioner was incarcerated twenty-nine (29) days until the State of Maryland nolle prossed this fugitive complaint. On December 31, 2003, Petitioner was again arrested as a fugitive from justice from Virginia (See Ex. 22) upon the same violation of probation show cause bench warrant, in Maryland. Denied bail again, Petitioner was incarcerated forty-eight (48) days until the State of Maryland dismissed the fugitive charge against Petitioner. One day later, Petitioner was again arrested as a fugitive from justice from Virginia (See Ex. 23) upon the same violation of probation show cause bench warrant, in Maryland. Denied bail again, Petitioner was incarcerated one hundred and five (105) days until Petitioner's release on a Writ of Habeas Corpus, successfully contesting extradition as a fugitive from justice from Virginia for violating the terms of his probation. Among the requisition documents submitted by the Commonwealth of Virginia in seeking Petitioner's extradition return was the January 1995 Embezzlement Indictment which resulted in Petitioner's Embezzlement conviction on February 8, 1995.

On August 3, 2006, Petitioner was again arrested as a fugitive from justice from

Virginia on the same violation of probation show cause bench warrant, this time in Rhode Island (See Ex 24). Denied bail again, Petitioner has been incarcerated, to date, a total of one hundred ninety-two (192) days. Among the requisition documents submitted by the Commonwealth of Virginia in seeking Petitioner's extradition return is the same January 1995 Embezzlement Indictment submitted during Petitioner's extradition proceedings in Maryland in 2004.

As the U.S. Supreme Court decided in the Rhode Island extradition case of Bassing v. Cady, 208 U.S. 386, 28 S.Ct. 392 (1908):

"A second indictment for the same offense may serve as the basis for the second extradition of a person, as a fugitive from justice, without violating any rights secured to him by the federal constitution or laws, where the first indictment, on which the accused was originally extradited, was dismissed on motion of the state's attorney before the accused was placed in jeopardy."

Virginia's January 1995 Embezzlement Indictment (See Ex 25) is the same identical indictment used in both of my habeas extradition proceedings – the June 4, 2004 bench trial in Maryland and the January 5, 2007 bench trial in Rhode Island.

The U.S. Supreme Court in Richardson v. U.S., 468 U.S. 317; 104 S.Ct 3081 (1984) stated that:

"The fundamental principle underlying Burks, and indeed most of our double jeopardy cases, is that the prosecution is entitled to one, and only one, full and fair opportunity to convict the defendant. When the prosecution has failed to present constitutionally sufficient evidence, it cannot complain of unfairness in being denied a second chance, and the interests in finality, shared by the defendant and society, strongly outweigh the reasons for a retrial."

"A fugitive has neither more nor less constitutional rights than has an incarcerated prisoner." Johnson v. Matthews, 86 U.S. App. D.C. 376; 182 F.2d 677 (1950).

"The Double Jeopardy Clause was intended to protect against governmental

oppression." Justices of Boston Municipal Court v. Lydon, 466 U.S. 294; 104 S.Ct. 1805 (1984).

Virginia only gets "one bite of the apple," not four. Furthermore, it wasn't the fact that Virginia erred in providing more evidence, or that Virginia's evidence was not constitutionally sufficient. The important fact of the matter is that the evidence failed to establish, could not prove, that Petitioner is a fugitive from justice — no evidence could.

Obviously, Petitioner has a strong interest in the finality of these extradition proceedings. To date, Petitioner has lost a total of 374 days of his personal liberty — his freedom. That meets the definition, as stated in the U.S. Constitution, of the double jeopardy clause:

"no person shall be subject for the same offense to be twice put in jeopardy of life or limb."

Although its text mentions only harm to life or limb, the Amendment covers imprisonment and monetary penalties.

If the U.S. Supreme Court expressed the view that the Fourth Amendment applies in the extradition context (See Michigan v. Doran) then surely it must also hold that the Fifth Amendment applies in the extradition context. As the Doran Court stated:

"The extradition process involves an extended restraint of liberty following arrest even more severe than that accompanying detention within a single State. Extradition involves, at a minimum, administrative processing in both the asylum State and the demanding State, and forced transportation in between. It surely is a significant restraint on liberty."

Furthermore, as stated in U.S. v. Jarvis, 7 F.3d 404 (1993):

"The double jeopardy guarantee of U.S. Const. Amend. V creates not only the right to be free from multiple punishments for the same offense, but also the right to be immune from multiple ~~[illegible]~~ prosecutions for the same offense."

Petitioner has faced four prosecutions for allegedly being a fugitive from justice from Virginia and with it multiple punishments — incarceration for periods of 29 days, 48 days, 105 days and now 192 days and counting.

The issue as to whether or not Petitioner is a fugitive from justice from Virginia for having violated the terms of his probation (See Ex. 19) was decided on June 4, 2004 (See Ex. 18) and constitutes an estoppel upon a reinvestigation of the same question (See also Argument III).

Habeas corpus proceedings involving extradition are considered criminal in nature and invoke Petitioner's due process rights, including Petitioner's Fifth Amendment rights.

# ARGUMENT VI

## THE COMMONWEALTH OF VIRGINIA HAS NO JURISDICTIONAL BASIS TO ATTEMPT TO EXTRADITE PETITIONER AS A FUGITIVE FROM JUSTICE

Depending on whose extradition claims are validated by this, or any court, as the basis for Virginia's extradition demand – Deputy Commonwealth Attorney Raymond Morrogh (through his Requisition Affidavit) and Virginia Governor Timothy Kaine's (through his Requisition Warrant) claim that Petitioner is wanted as a fugitive from justice on an August 16, 2004 Violation of Probation Bench Warrant or Rhode Island Assistant Attorney Generals John Corrigan and Christopher Bush (through oral statements and written submissions), Rhode Island Superior Court Justice Vincent Ragasta (through oral statements) and Circuit Court for Fairfax County, Virginia Judge Stanley Klein's (through oral statements made on August 9, 2004 and written submissions – August 16, 2004 Bench Warrant) claim that Petitioner is wanted as a fugitive from justice on an August 16, 2004 Bench Warrant to serve a 7 year sentence, both fail on jurisdictional foundations in Virginia's attempt to extradite Petitioner as a fugitive from justice for the following reasons.

First, Petitioner can't be deemed a fugitive from justice according to the language of Virginia's requisition demand (Affidavit and Governor's Warrant) because Petitioner's probation was terminated by Final Order of the Circuit Court for Fairfax County, Virginia on October 22, 1999, after Petitioner's revocation hearing on September 17, 1999, when that Court ordered 7 years of Petitioner's 10 year sentence imposed and the balance of Petitioner's restitution be reduced to a civil judgment. No other Order, Final, Appellate, or otherwise, reverses this decision. Furthermore, Petitioner's term of probation – 8 years imposed on November 29, 1995 after Petitioner's parole from his two year sentence, expired on November 29, 2003, approximately nine (9) months before the issuance of the Show Cause Warrant by the trial court. Therefore, Petitioner cannot

be considered a fugitive from justice on an August 16, 2004 Show Cause Bench Warrant because Petitioner was no longer on probation at that time.

Finally, Petitioner also can't be deemed a fugitive from justice according to statements and submissions made by the asylum state and the August 16, 2004 Bench Warrant issued by Virginia Circuit Court Judge Klein that Petitioner is wanted by Virginia to finish serving a seven (7) year sentence because Petitioner was released from a Virginia jail one week after the imposition of his 7 year sentence on an appeal bond. Thus, Petitioner was allowed to leave Virginia voluntarily back to Maryland — Petitioner did not flee.

However, and most importantly, pursuant to the terms and conditions of said bond, Petitioner's release was contingent upon appellate decision of the Court of Appeals of Virginia (See Exhibit 11). After Petitioner's appellate avenues in Virginia were exhausted on May 11, 2001,[6] no request was made by the trial court for Petitioner's return from Maryland to finish serving his 7 year sentence. On November 18, 2002, Petitioner's appeal bond was returned (See Exhibit 14), thus Virginia waived or forfeited, any jurisdiction they may have had over Petitioner and Petitioner cannot be deemed a fugitive from justice on the August 16, 2004 Bench Warrant to serve a 7 yr sentence. Virginia relinquished all jurisdiction to enforce completion of his unexpired term of imprisonment by returning Petitioner's appeal bond to him.

> "When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment." [And seizure of the principal by his sureties is likened to the rearrest by the sheriff of an escaping prisoner]. Taylor v. Taintor, 16 Wall. (83 U.S.) 366, 371.

Additionally, Petitioner's 7 year sentence expired on September 17, 2006. Flight — being a fugitive from justice — is a jurisdictional fact (See Argument III) (See Hyatt v. People ex rel. Corkran, 188 U.S. 691, 23 S.Ct. 456 (1903)).

[6] The Court of Appeals of Virginia denied Petitioner's appeal on November 28, 2000.

# ARGUMENT VII

## THE PETITION FOR WRIT OF HABEAS CORPUS SHOULD BE GRANTED UNDER THE DOCTRINES OF RES JUDICATA AND THE FULL FAITH AND CREDIT CLAUSE OF THE UNITED STATES CONSTITUTION

Petitioner is currently illegally incarcerated as Petitioner's release on June 4, 2004 from a Writ of Habeas Corpus challenging his arrest under Maryland Governor Robert Ehrlich's Rendition Warrant as a fugitive from justice from Virginia for violating the terms of his probation is res judicata to this current extradition proceeding in Rhode Island; therefore, Petitioner must be released.

On February 18, 2004 Virginia sought for the third time to extradite Petitioner from Maryland to Virginia on the violation of probation warrant. The two prior extradition attempts were dismissed on procedural grounds, specifically, the failure of Virginia to obtain a governor's warrant within the required thirty day period. This time, however, Virginia obtained a governor's warrant in a timely fashion. Petitioner contested extradition by filing a petition for writ of habeas corpus in the Circuit Court for Washington County, Maryland. At issue was whether Petitioner was a "fugitive" [for violating the terms of his probation] within the meaning of the Uniform Criminal Extradition Act. After hearing, the writ was granted on June 4, 2004 for "good cause shown and in the interests of justice." (See Exhibit 18).

As a general rule, a discharge from custody upon a writ of habeas corpus precludes any further detention or imprisonment under the same process or in the same proceeding. State v. Gavin, 167 A.2d 747 (R.I. 1961). This common law rule is codified in R.I.G.L. subsection 10-9-29 entitled re-arrest of discharged person. The statute reads as follows:

"No person who has been discharged upon a writ of habeas corpus shall be again imprisoned or restrained for the same cause, unless he or she is indicted or charged by information therefor

or convicted thereof, or committed for want of bail, by some court of record having jurisdiction of the cause, or unless, after a discharge for defect of proof or for some material in the commitment in a criminal case, he or she shall be again arrested on sufficient proof, and committed by legal process, for the same offense."

"An order or judgment discharging a person in such proceedings is conclusive in his favor that he is illegally held in custody and is res judicata of all issues of law and fact necessarily involved in that result, and he cannot again be arrested for the same cause, that is, upon the same warrant, indictment or information which was therein held illegal." Gavin, 167 A.2d at 748 quoting State exrel. Cacciatore v. Drumbright, 156 So. 721 (1934).

Rhode Island's application of the doctrine of res judicata in extradition proceedings is consistent with other jurisdictions and with the United States Supreme Court. See, State ex rel. Moore v. Conrad, 371 S.E.2d 74 (1988) (res judicata should bar subsequent extradition proceedings where no new facts or conditions are presented); Ex parte Messina, 128 S.W.2d 1082 (1939) (res judicata applies in cases of habeas corpus to judgment discharging the petitioner where no new state of facts is shown warranting restraint); Stack v. State ex rel Kaye, 333 So.2d 509 (1976) (res judicata barred second extradition proceeding where indictment documents were identical to first proceeding); Morse v. U.S., 267 U.S. 80; 45 S.Ct 209 (1925) (No discharge by writ of habeas corpus will operate as a bar to further proceedings in the same cause, unless the inquiry on the petition for writ involves a full investigation into the merits of the case). Collins v. Loisel, 262 U.S. 426; 43 S.Ct. 618 (1923) ("The instant extradition order, based upon affidavits identical to those used in a prior extradition proceeding in which appellant was discharged on habeas corpus due to procedural irregularities, and did not go to the issue of the propriety of appellant's detention") ("A judgment in habeas corpus [extradition] proceedings

O

discharging a prisoner held for preliminary examination may operate as res judicata.); among other jurisdictions – See Exhibit 28

As supported by these U.S. Supreme Court res judicata extradition proceedings, Petitioner's current extradition proceeding in Rhode Island should be dismissed according to the principle of res judicata as Petitioner's habeas extradition hearing [and release] in Maryland on June 4, 2004 went to the propriety of Petitioner's detention

Other cases demonstrate this tenant. For instance, in People ex rel. Chakouian v. Hoy, 183 N.Y.S.2d 980 (NY 1959), the petitioner was wanted as a fugitive from Massachusetts. He was arrested in East Providence, Rhode Island on the fugitive complaint and held for extradition proceedings. A governor's warrant was obtained and habeas corpus proceedings instituted in Providence Superior Court. The trial justice granted petitioner's writ of habeas corpus and released him finding that he was not a fugitive since he was not within the Commonwealth of Massachusetts at the time of the commission of the offense. One year later, petitioner was arrested in New York on the same fugitive complaint from Massachusetts. Once again Massachusetts sought and obtained a governor's warrant. In granting the writ, the New York Supreme Court gave full faith and credit to the Rhode Island Court decision. Specifically, the question of fact decided by the Rhode Island Court, whether the accused was in the demanding state at the time of the commission of the offense, was previously decided by Rhode Island and given full faith and credit pursuant to the Constitution of the United States, Art. 4, subsection 1.

As Providence Superior Court was considered a court of competent jurisdiction to consider the question as to whether the accused was a fugitive, so also is Maryland Circuit Court a court of competent jurisdiction to consider the issue of whether Petitioner was a fugitive from Virginia. The Maryland Circuit Court granted the writ of habeas corpus finding that Petitioner did not qualify as a fugitive under the Uniform Criminal Extradition Act. The

same parties and issue is now before this Court for adjudication. Since this issue was fully litigated, the ruling of the Maryland Circuit Court should be given effect here pursuant to the doctrine of res judicata as well as the full faith and credit clause of the United States Constitution, Article 4, subsection 1.

The closest federal or state case that Petitioner could find that prevents the use of res judicata in a habeas extradition proceeding is the case of Hooker v. Klein, 573 F.2d 1360 (1978), however that case cannot be used in the habeas extradition proceeding of Keselica v. Wall because Hooker is an "international" extradition case which relies on 18 U.S.C.S. subsection 3184, while the extradition matter of Keselica is a "domestic" extradition case employing the language of 18 U.S.C.S. subsection 3182. Furthermore, the Hooker Court's (9th Circuit) rationale for the prohibition of res judicata is that it is more akin to a preliminary hearing on criminal charges and thus does not bar the rearrest of a fugitive over and over and over again, for the same cause, which is totally in opposite to the U.S. Supreme Court's position in Collins v. Loisel "that a judgment in habeas corpus proceedings discharging a prisoner held for preliminary examination may operate as res judicata" (emphasis added). Hyatt v. People ex rel. Corkran, 188 U.S. 691 (No rare cases in this country on international extradition precedents in point).

In touching upon the subject of repeated arrests in extradition cases, the U.S. Supreme Court stated in Collins that: "The precise question appears not to have been passed upon by this Court in any case involving international extradition. But in Bassing v. Cady, 208 U.S. 386, 391 (1908), the rule was applied to a case of interstate rendition. Protection against unjustifiable vexation and harassment incident to repeated arrests for the same alleged crime must ordinarily be sought, not in constitutional limitations or treaty provisions, but in a high sense of responsibility on the part of the public officials charged with duties in this connection".

This is Petitioner's 4th arrest for the same issue, same cause, same indictment. Therefore, the June 4, 2004 judgment of the Maryland court is res judicata

to the current extradition proceeding against Petitioner here in Rhode Island bars any further proceedings in Rhode Island on the same charges – fugitive from justice from Virginia for violating probation; that the reimprisonment of this Petitioner is unlawful and that he is entitled to be released from custody.

We as Americans cannot blithely ignore the full faith and credit clause of both the Federal (Art. IV, subsection 1) and State Constitutions as its fruition is written in the blood of patriots.

## CONCLUSION

The Extradition Act of 1793, 18 U.S.C.S. subsection 3182, leaves only four issues open for consideration before the fugitive is delivered up: (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

Petitioner has conclusively proven against (a) and (d) and therefore must be released.

All that is required to make this proceeding legal and not in violation of any rights Petitioner is entitled to and secured for him by the U.S. Constitution and the Uniform Criminal Extradition Act, is for Deputy Commonwealth Attorney Raymond Morrogh to submit a Requisition Affidavit to the Virginia Governor stating the true facts of this case: that Petitioner is a non-fugitive, is wanted to serve a 7 year sentence and that this is the fourth (4th) Requisition Application submitted by the Office of the Commonwealth Attorney for Fairfax County, Virginia for the extradition request of Petitioner and then for the Virginia Governor to submit his Requisition Warrant for the extradition of Petitioner under the non-fugitive provisions of the U.C.E.A. to serve a 7 year sentence.

Rhode Island Assistant Attorney General John Corrigan has stated in his submissions to the Rhode Island Courts that these are non-prejudicial clerical errors on the part Mr. Morrogh. If they are (they aren't), then why haven't these documents been corrected or amended. For that's all that Petitioner requests – a proceeding at the behest of Virginia that is void of any constitutional abuse – something Petitioner has never had in Virginia, or at the request of Virginia (i.e. extradition proceedings in 2001, 2004 and now in 2006).

Why has this not been done? Because Virginia can't do it, because they will not do it.

WHEREFORE, for the facts presented above, Petitioner respectfully requests this Court to grant Petitioner's Writ of Habeas Corpus. Furthermore, Petitioner requests a hearing on this matter and the opportunity to amend and supplement his Petition as needed.

Respectfully submitted,

Michael Keselica
#131867
P.O. Box 8249
Cranston, RI 02920

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February, 2007 a copy of the foregoing was mailed postage paid first class to the Office of the United States Attorney, 50 Kennedy Plaza, Providence, RI 02903

Michael Keselica