**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **MICHAEL KESELICA,** | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **C.A. No. 07-067 T** |
| | : | |
| **A.T. WALL,** | : | |
| **Respondent.** | : | |

**OBJECTION TO PETITIONER'S MOTION TO SET BAIL OR GRANT PETITIONER'S RELEASE TO HOME INCARCERATION, PETITIONER'S MOTION FOR IMMEDIATE STAY OF EXECUTION OF RHODE ISLAND GOVERNOR DONALD L. CARCIERI'S RENDITION WARRANT, AND PETITIONER'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF**

For all of the reasons discussed in its accompanying memorandum of law, and pursuant to this Court's February 21, 2007, Order, designated party/respondent State of Rhode Island objects to Petitioner's Motion To Set Bail Or Grant Petitioner's Release To Home Incarceration, Petitioner's Motion For Immediate Stay Of Execution Of Rhode Island Governor Donald L. Carcieri's Rendition Warrant, and Petitioner's Motion For Emergency Injunctive Relief.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorney,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Christopher R. Bush

Christopher R. Bush, #5411
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: March 9, 2007

**Certificate of Service**

Pursuant to AP 10 of this Court, I hereby certify that on March 9, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I caused a copy of this Objection to be sent to the following by first class mail on March 9, 2007:

Michael Keselica
A.C.I.
P.O. Box 8249
Cranston, RI 02920

/s/ Christopher R. Bush

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **MICHAEL KESELICA,** | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **C.A. No. 07-067 T** |
| | : | |
| **A.T. WALL,** | : | |
| **Respondent.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO PETITIONER'S MOTION TO SET BAIL OR GRANT PETITIONER'S RELEASE TO HOME INCARCERATION, PETITIONER'S MOTION FOR IMMEDIATE STAY OF EXECUTION OF RHODE ISLAND GOVERNOR DONALD L. CARCIERI'S RENDITION WARRANT, AND PETITIONER'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF**

## I. INTRODUCTION

Now comes designated party/respondent State of Rhode Island ("State"), by and through its attorneys, and pursuant to this Court's February 21, 2007, Order, and objects to Petitioner's Motion To Set Bail Or Grant Petitioner's Release To Home Incarceration ("Motion to Set Bail"), Petitioner's Motion For Immediate Stay Of Execution Of Rhode Island Governor Donald L. Carcieri's Rendition Warrant ("Motion for Stay"), and Petitioner's Motion For Emergency Injunctive Relief ("Motion For Injunction"). As discussed more fully below, the Petitioner cannot establish a likelihood of success on the merits of his underlying habeas petition and cannot otherwise identify any exceptional circumstances justifying the issuance of the extraordinary relief sought in each motion. The State therefore respectfully requests that this Court summarily deny each of the Petitioner's motions.[1]

[1] Unless otherwise ordered, the State intends to turn custody of the Petitioner over to the Commonwealth of Virginia should this Court deny the instant motions.

## II. BACKGROUND

The basic facts giving rise to the underlying habeas petition do not appear to be in serious dispute. To the contrary, the State previously stipulated to certain facts when responding to a habeas petition that Keselica filed in the Rhode Island Superior Court, which that court denied on January 5, 2007. A copy of that Agreed Upon Statement Of Facts is attached as Exhibit 1. The State will stipulate to the same set facts for purposes of responding to the instant motions.[2]

On February 8, 1995, Petitioner Michael Keselica ("Petitioner") pled guilty to felony embezzlement charges in the Circuit Court of Fairfax County, Virginia. *See* Exhibit 1 at ¶ 2. A more detailed recitation of the facts underlying this conviction may be found in Keselica v. Commonwealth, 480 S.E.2d 756 (Va. Ct. App. 1997). In short, the Petitioner used money—the life savings of an elderly couple—that two friends entrusted to him to invest to support a drug addiction. *See* Keselica, 480 S.E.2d at 756-57; Keselica v. Commonwealth, 537 S.E.2d 611, 613 (Va. Ct. App. 2000).

On April 21, 1995, the Circuit Court of Fairfax County sentenced the Petitioner to twelve (12) years at the Virginia Department of Corrections, thirty (30) months to serve, the balance suspended with eight (8) years of probation. *See* Exhibit 1 at ¶ 2. The court subsequently granted the Petitioner's motion to reconsider this sentence, and, on or about June 16, 1995, reduced the time to serve component of the sentence to one (1) year and three hundred sixty-four (364) days. *See* Exhibit 1 at ¶ 3. All other terms and conditions of the original sentence, which included, as a special condition of his probation, that the Petitioner pay restitution in accordance with a court-approved restitution plan, remained in full force and effect. *See* Exhibit 1 at ¶ 3.

---

[2] The Petitioner relies on and recites each of these stipulated facts (with a few minor immaterial discrepancies) in his Petition for Writ of Habeas Corpus Subsection 2241 ("Petition"). *See* Petition at 1-5.

On September 17, 1999, the Circuit Court of Fairfax County held that the Petitioner violated the terms and conditions of the probation imposed in the 1995 embezzlement case and executed seven (7) years of his suspended sentence. *See* Exhibit 1 at ¶ 5. The circuit court stayed the execution of the seven year sentence pending appeal and released the Petitioner on bond. *See* Exhibit 1 at ¶ 8.

The Court of Appeals of Virginia denied the Petitioner's appeal of the violation adjudication on November 28, 2000. *See* Exhibit 1 at ¶ 8; *see also* Keselica, 537 S.E.2d at 611. Notwithstanding the fact that the Petitioner exhausted all appeals of the violation adjudication, he has never returned to Virginia to serve the seven year sentence that the circuit court executed on September 17, 1999.[3] Moreover, on several occasions following September 17, 1999, Virginia probation authorities reported to the circuit court that the Petitioner again violated the terms and conditions of his probation and the Circuit Court of Fairfax County issued a number of warrants for his arrest.[4] *See* Exhibit 1 at ¶ 7.

The Rhode Island State Police stopped the Petitioner for a traffic violation in Rhode Island on August 3, 2006. *See* Exhibit 1 at ¶ 13. They arrested him after a National Criminal Identification Computer check revealed an outstanding Virginia warrant relating to his probation violation. *See* Exhibit 1 at ¶ 13.

On or about August 28, 2006, Virginia Governor Timothy M. Kaine sent a formal Requisition Demand to Rhode Island Governor Donald L. Carcieri requesting extradition of the

---

[3] In addition to his current incarceration at the A.C.I., the Petitioner also spent a portion of the last seven years in prison in Maryland serving a sentence that he received after being convicted of embezzlement in Maryland. *See* Exhibit 1 at ¶ 10.

[4] The Petitioner filed a Petition For Writ Of Habeas Corpus Subsection 2254 in this Court in October 2006 (C.A. 06-448ML), over which this Court declined to exercise jurisdiction. In that proceeding, the Petitioner contested the issue of whether the terms and conditions of his probation continued after the circuit court adjudicated him a violator on September 17, 1999.

Petitioner, whom he described as a "fugitive from justice."[5] *See* Exhibit 2. In support of this demand, Governor Kaine attached myriad warrants and court orders relating to the Petitioner's embezzlement conviction, probation violation adjudication, and charges that the Petitioner again violated his probation after September 1999. In response to the Requisition Demand, Governor Carcieri issued an Executive Warrant on September 12, 2006, authorizing the Petitioner's extradition to Virginia. *See* Exhibit 3 (without attachment—Governor Kaine's Rendition Warrant)

On or about October 5, 2006, the Petitioner filed a petition for writ of habeas corpus in the Rhode Island Superior Court challenging his extradition to Virginia. The Superior Court denied that petition on January 5, 2007. Six days later, the Petitioner petitioned the Rhode Island Supreme Court for a writ of habeas corpus challenging his extradition to Virginia. The Rhode Island Supreme Court denied that petition in a one-line order dated February 15, 2007. *See* Exhibit 4.

The Petitioner filed a Petition For Writ Of Habeas Corpus Subsection 2241 ("Petition") and the instant motions in this Court on February 20, 2007.

---

[5] The State does not dispute that this was Virginia's fourth attempt to extradite the Petitioner. First, Maryland authorities arrested him at his Maryland home on June 21, 2001, as a fugitive from justice. *See* Exhibit 1 at ¶ 9. A Maryland court dismissed this complaint one month later because Virginia apparently did not obtain a Governor's Warrant within thirty (30) days as the law required. *See* Exhibit 1 at ¶ 9. Second, Virginia officials placed a detainer on the Petitioner, who was then serving a three year sentence in Maryland for violating the terms of probation related to a Maryland conviction, on December 30, 2001. *See* Exhibit 1 at ¶ 10. A Maryland court dismissed this complaint on February 17, 2004, apparently because Virginia once again did not obtain a Governor's Warrant within thirty (30) days. *See* Exhibit 1 at ¶ 10. Third, Virginia sought to extradite the Petitioner following his arrest one day later, on February 18, 2004, in Maryland. *See* Exhibit 1 at ¶ 11. The Petitioner contested extradition through the filing of a habeas petition in Maryland state court, and, on June 4, 2004, a Maryland state court granted that petition. *See* Exhibit 1 at ¶ 11.

## III. DISCUSSION

### A. Motion to Set Bail

"[A] district court entertaining a petition for habeas corpus has inherent power to release petitioner pending determination of the merits." Woodcock v. Donnelly, 470 F.2d 93, 94 (1st Cir. 1972). Bail in a habeas case is the exception, rather than the rule; it is only available "when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." Landano v. Rafferty, 970 F.2d 1230, 1239 (3d Cir. 1992); *see also* Layne v. Gunter, 559 F.2d 850, 851 n.2 (1st Cir. 1977) ("petitioner has failed to make the extraordinary kind of showing which would lead us to order petitioner's release on bail."); Woodcock, 470 F.2d at 94 ("we cannot say that the district court abused its discretion in finding that 'such an exigency of circumstances' as warrants release on bail does not exist with regard to petitioner's health . . . [and] we are not prepared to say that the district court abused its discretion in finding that petitioner did not prevail in establishing the probability of success on the merits."); Brian R. Means, *Fed. Habeas Practitioner Guide*, *Jurisdiction* ¶ 8.131.0. The Petitioner cannot satisfy either prerequisite in this case.

#### 1. Likelihood of Success on the Merits

"Extradition is not a matter of comity or compact between the states. It is mandated by Article IV, Sec. 2, Clause 2 of the United States Constitution . . . ."[6] Brown v. Sharkey, 263

---

[6] Article IV, section 2, clause 2, of the United States Constitution states as follows:

> A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

Id.

A.2d 104, 106 (R.I. 1970). "It is the constitutional duty of an asylum state to enforce the Constitution's interstate rendition clause faithfully." Baker v. Laurie, 375 A.2d 405, 407 (R.I. 1977); *see also* Brown, 263 A.2d at 106. Rhode Island adopted the Uniform Criminal Extradition Act in 1947, *see* R.I. Gen. Laws § 12-9-1 et seq., "to implement the constitutional requirements of Article IV and to set forth procedures to be followed in this area of the law." Laurie, 375 A.2d at 407; *see also* Brown, 263 A.2d at 106.

Federal habeas review of an extradition proceeding is limited once a governor has granted extradition. In Michigan v. Doran, 439 U.S. 282, 289 (1978), the Supreme Court held that

> a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

Id.; *see also* Burdick v. Maine Attorney General, 244 F. Supp. 2d 1, 4 (D. Me. 2002) (citing Behr v. Ramsey, 230 F.3d 268, 270-71 (7th Cir. 2000); Strachan v. Colon, 941 F.2d 128, 130 (2d Cir. 1991); McDonald v. Burrows, 731 F.2d 294, 296 (5th Cir. 1984); Pfaff v. Wells, 648 F.2d 689, 691-92 (10th Cir. 1981)).

The Petitioner does not seem to contest the propriety of the Virginia extradition papers[7] or that he has been charged with a crime in the demanding state, and does not claim that he is not the person named in the Requisition Demand. *See* Petition at 41. To the contrary, he concedes that (1) he pled guilty to felony embezzlement in 1995, *see* Exhibit 1 at ¶ 2; (2) the Fairfax County Circuit Court adjudicated him a probation violator in 1999 and executed seven years of a suspended sentence—which he has not served, *see* Exhibit 1 at ¶ 5; and (3) the Fairfax County

[7] The Petitioner challenges the *substance* of the extradition documents, but does not appear to challenge the *form* of those documents.

Circuit Court has issued several additional probation violation warrants for his arrest, *see* Exhibit 1 at ¶ 7. Instead, and notwithstanding the fact that the Petitioner includes seven "arguments" in his Petition, the sole basis for his Petition is seemingly his claim that he is not a "fugitive" as the Requisition Demand alleges. *See* Petition at 8, 10, 12-13, 15-24, 26-29, 32-34, 38-41.

The distinction between a "fugitive" and a "nonfugitive" is not without a difference for purposes of extradition. Under both the Extradition Clause and R.I. Gen. Laws § 12-9-3, an asylum state—here, Rhode Island—must extradite a "fugitive" to a demanding state. *See* U.S. Const. Art. IV, § 2, cl. 2; R.I. Gen. Laws § 12-9-3 ("[I]t is the *duty* of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.") (emphasis added). A state is under no such compulsion with respect to a "nonfugitive," defined as an individual who commits "a crime against the laws of a state by acts done outside of that state," in other words, a person who has not physically fled the requesting state because he was not there. *See* Baker, 375 A.2d at 408; Hill v. Blake, 441 A.2d 841, 843 (Conn. 1982). Under R.I. Gen. Laws § 12-9-8, the Governor has discretion as to whether to extradite the nonfugitive.[8] *See* R.I. Gen. Laws § 12-9-8.

---

[8] Section 12-9-8 provides in pertinent part as follows:

> The governor of this state *may* also surrender, on demand of the executive authority of any other state, any person in this state charged in the other state . . . with committing an act in this state or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, when the acts for which extradition is sought would be punishable by the laws of this state, and if the consequences claimed to have resulted from the crime in the demanding state had taken effect in this state. The provisions of this chapter, not otherwise inconsistent, shall apply to those cases, even though the accused was not in that state at the time of the commission of the crime and has not fled from that state . . . .

Id. (emphasis added).

Here, the Petitioner claims that the Requisition Demand improperly identified him as a "fugitive" and that, as a result, Governor Carcieri had no discretion as to whether to extradite him to Virginia. *See, e.g.*, Petition at 8. In support of this claim, the Petitioner seizes upon a single sentence in the affidavit of Deputy Commonwealth Attorney Raymond Morrogh, attached to Governor Kaine's Requisition Demand, which states that the Petitioner "was in the State of Virginia at the time of the commission of the said crime . . . ." The Petitioner argues that this is false because he lived in Maryland when he is alleged to have violated the terms and conditions of his probation. *See, e.g.*, Petition at 8; Exhibit 1 at ¶¶ 6-7. The Petitioner claims that, because he was not in Virginia when he violated his probation, he is not a "fugitive."

There is a fatal flaw in the Petitioner's argument, however—it ignores the *undisputed* fact that *the Circuit Court of Fairfax County already adjudicated him a probation violator and executed seven years of the suspended sentence that the Petitioner received for the 1995 embezzlement conviction. See* Exhibit 1 at ¶ 5 ("Mr. Keselica was found in violation of his probation as a result of missing several restitution payments and for being untruthful to his probation officer. After hearing, Mr. Keselica was ordered to serve seven years of the remaining ten year suspended sentence."). While there is no question that the Morrogh affidavit could have been clearer on this point, the Requisition Demand and supporting papers as a whole make it clear that, while there may be additional probation violation charges yet to be adjudicated, the Commonwealth of Virginia seeks to have Keselica extradited so that he may serve the seven year sentence that the Circuit Court of Fairfax County previously executed. The August 16, 2004, Bench Warrant attached to the Requisition Demand and specifically incorporated therein, is crystal clear on this point:

> On September 17, 1999, the Court revoked seven (7) years of the Defendant's suspended sentence and **ORDERED** the Defendant to serve seven (7) years with the Virginia Department of Corrections.
>
> On September 17, 1999, an appeal bond was set at seven thousand five hundred ($7,500) dollars and the Defendant made bond and was released on bond pending appeal. All appeals have now been heard and the sentence set at the revocation hearing has been affirmed.
>
> The Defendant has exhausted all appeals and he has failed to turn himself in to serve his sentence.
>
> A hearing was scheduled by the Court for August 9, 2004. Counsel for both the Defendant and the Commonwealth appeared, but the Defendant did not appear.
>
> Therefore, in the name of the Commonwealth of Virginia, I command you to apprehend MICHAEL KESELICA and bring him before the Judge of our Circuit Court of Fairfax County, Virginia, FORTHWITH to be further dealt with according to law.

*See also* Requisition Demand ("Keselica stands convicted of the crime(s) of Embezzlement in the County of Fairfax, PLACED ON PROBATION AND HAS VIOLATED THE TERMS THEREOF and thereafter fled from the justice of this State . . . .").

The fact that the Commonwealth of Virginia sought to extradite the Petitioner to serve the seven year sentence eviscerates his claim that he is not a fugitive. The Petitioner concedes that he was in Virginia both when he was convicted of embezzlement and when he was adjudged to have violated the probationary component of the sentence that he received for that conviction, *see* Exhibit 1 at ¶¶ 2, 6, and that he subsequently left the jurisdiction and has refused to return, *see* Exhibit 1 at ¶¶ 7, 10-11.

Even if one were to accept the Petitioner's myopic view of the Requisition Demand—that it seeks the Petitioner's return to adjudicate probation violation charges based on the Petitioner's failure to comply with the terms and conditions of his probation while he lived in Maryland—the Petitioner is still properly characterized as a "fugitive." While no Rhode Island court has ever addressed the issue of whether an individual who is alleged to have violated his or her probation

in a requesting state through acts committed outside of that state (either in the asylum state or a third state) is a "fugitive," no fewer than seven other states that have adopted the Uniform Criminal Extradition Act as a model for state legislation have: Alabama, Colorado, New Jersey, Ohio, Oregon, Vermont, and Washington. Each of these courts reached the same conclusion: "A person who violates the terms of his or her probation is a fugitive from justice subject to extradition, regardless of where he is when the alleged violation occurs." Betschart v. Spinden, 20 P.3d 202, 204 (Or. Ct. App. 2001) (citing and quoting Calhoun v. State, 726 So.2d 751, 755 (Ala. Crim. App. 1998) ("'This State will not inquire into the propriety of Ohio's decision that [the petitioner] is an alleged probation violator.'"); Wynsma v. Leach, 536 P.2d 817, 819-20 (Colo. 1975) ("'[A] parolee is subject to extradition as a fugitive because, as a convict with an unexpired sentence, he remains criminally 'charged.' His extradition is for his original offense . . . . Since [the petitioner] is being extradited for an uncompleted sentence for narcotics possession, his location at the time of the parole violation is also immaterial.'"); Ex Parte Trignani, 80 A.2d 371, 373 (N.J. Super. Ct. App. Div. 1951) ("'A paroled convict leaving the state even by consent of the paroling authority becomes, on revocation of such parole, a fugitive from justice[.]'"); Carpenter v. Jamerson, 432 N.E.2d 177, 180-81 (Ohio 1982) ("petitioners on probation have not yet 'satisfied' their criminal convictions; notwithstanding petitioner's testimony that his Georgia probation officer told him he could move to Ohio and could cease making payments as required by his probation, petitioner was fugitive from justice simply by virtue of alleged probation violation"); In re Hval, 537 A.2d 135, 137 (Vt. 1987) ("'[T]he crime referenced under [the UCEA] is not the 'crime' of probation violation, but is rather the original crime on conviction of which the probation was based in the requisitioning state.'"); Ex Parte Summers, 243 P.2d 494, 495-96 (Wash. 1952) ("where the extradition papers from Illinois

properly alleged that a petitioner had violated his parole in Illinois, he was a fugitive from justice despite his allegation that his earlier release from custody in Illinois was a final discharge: 'An alleged parole violator is a fugitive from justice from the state which claims to have granted his parole. One who has been sentenced and paroled is, during the maximum term of his sentence, amenable to the process of the paroling state to enforce the terms of his parole. By absenting himself from that state, he renders himself unavailable for this purpose.'")).

The case from the Pennsylvania Superior Court to which the Petitioner cites in his Petition as support for his contrary position is inapposite. *See* Petition at 9. Commonwealth v. Livengood, 901 A.2d 556 (Pa. Super. Ct. 2006), is a paradigm "nonfugitive" case. The defendant in that case had been *charged* with the crime of stalking in West Virginia based on allegations that he made two telephone calls to a West Virginia residence from Pennsylvania. *See* id. at 558. The Livengood court held that, as a result, the warrant that the Pennsylvania Governor issued extraditing Livengood to West Virginia was invalid as it had not been obtained under the Pennsylvania statute similar to R.I. Gen. Laws § 12-9-8 making extradition discretionary. *See* id. at 560. In this case, the Petitioner is not simply charged with committing a crime in Virginia; he has been convicted of committing a crime, adjudicated in violation of the probationary sentence imposed in connection therewith, and alleged to have further violated the terms and conditions probation.

For these reasons, the State would submit that the Petitioner is not likely to succeed on the merits of his underlying claim and that, as a result, he is not entitled have this Court set bail or grant his release to "home incarceration."

**2. Extraordinary or Exceptional Circumstances**

The Defendant also has not identified any "extraordinary" or "exceptional" circumstances warranting release on bail. Such circumstances seem to be limited to situations where (1) the petitioner's health is seriously deteriorating, *see* Landano, 970 F.2d at 1238-39 (release on bail to hospital for immediate treatment appropriate for diabetic petitioner rapidly progressing towards blindness when confined); Woodcock, 470 F.2d at 94 (no exigent circumstances with respect to petitioner's health); (2) there is an extraordinary delay in the processing of the petition, *see* Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir. 1972); or (3) the petitioner would complete service of a sentence before meaningful collateral review could be had, *see* Boyer v. City of Orlando, 402 F.2d 966, 968 (5th Cir. 1968). *See* Brian R. Means, *Fed. Habeas Practitioner Guide*, *Jurisdiction*, ¶ 8.131.0.

None of these extraordinary circumstances exist here. The Petitioner does not claim that he is suffering from ill health—to the contrary, he claims that, prior to his arrest, he was "employed full time at Newport Specialty Foods" and caring for his father—and there is no suggestion of any "extraordinary delay in the processing of the petition" or that he would complete service of his sentence before meaningful collateral review could be had.

For these reasons, the State would submit that the Petitioner has not established the existence of any "extraordinary" or "exceptional" circumstances in this case that would warrant this Court setting bail or granting the Petitioner's release to "home incarceration."

**B. Motion For Stay**

Title 28, section 2251 of the United States Code provides as follows:

> A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

Id. Although typically used to either stay the execution of an incarcerated petitioner, or a federal habeas proceeding involving a petition containing both exhausted and unexhausted claims, the State has not identified any authority explicitly prohibiting its application in this context. In any event, § 2251 "does not mandate the entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court." McFarland v. Scott, 512 U.S. 849, 858 (1994).

The standard for issuance of a stay in a noncapital case is the same as the standard for granting preliminary injunctive relief. *See* Byrd v. Moore, 252 F. Supp. 2d 293, 297 (W.D.N.C. 2003). Four factors are considered in determining whether a stay of execution is appropriate: "'[W]hether the movant has made a showing of likelihood of success on the merits and of irreparable injury if the stay is not granted, whether the stay would substantially harm other parties, and whether granting the stay would serve the public interest." In re Holladay, 331 F.3d 1169, 1176-77 (11th Cir. 2003) (quoting Bundy v. Wainwright, 808 F.2d 1410, 1421 (11th Cir. 1987)); *see also* Stepney v. Lopes, 597 F. Supp. 11 (D. Conn. 1984).

The Petitioner cannot satisfy these prerequisites for injunctive relief, primarily because, as discussed in detail above, supra, at III.A.1, he cannot show a likelihood of success on the merits of his habeas petition. Although absent the issuance of this requested relief the State will return the Petitioner to the Commonwealth of Virginia as expeditiously as possible, the State would submit that, since there is no legal merit to the Petitioner's Petition, there is no legitimate

reason to delay the inevitable. Moreover, the remaining considerations favor a denial of the Motion for Stay. The public has an interest in the speedy return of the Petitioner to Virginia, at least insofar as it furthers the "'obvious objection of the Extradition Clause'" to ensure "'that no State should become a safe haven for the fugitives from a sister state's criminal justice system.'" New Mexico ex rel. Ortiz v. Reed, 524 U.S. 151, 154-55 (1998) (quoting California v. Superior Court, 482 U.S. 400, 405-06 (1987)).

For these reasons, this Court should deny the Petitioner's Motion for Stay.

**C. Motion For Emergency Injunctive Relief**

Finally, the Petitioner "respectfully and urgently" moves this Court "pursuant to 28 U.S.C. subsection 2283" to halt "the execution of Governor Donald L. Carcieri's Rendition Warrant" and prevent "Petitioner's removal to Virginia pending litigation of Petitioner's 2241 habeas petition before this Court." The State objects to the instant motion because 28 U.S.C. § 2283 does not vest the Petitioner with the independent right to seek injunctive relief in this Court.

Title 28, § 2283 of the United States Code is more commonly referred to as the "Anti-Injunction Act." *See, e.g.*, Vendo Co. v. Lekto Vend Corp., 433 U.S. 623, 630 (1977); Casa Marie, Inc. v. Superior Court, 988 F.2d 252, 260-61 (1st Cir. 1993). It states that, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "[F]ederal courts cannot enjoin state-court proceedings unless the intervention is authorized expressly by federal statute or falls under one of two other exceptions to the Anti-Injunction Act." McFarland, 512 U.S. at 857.

As discussed above, "[t]he federal habeas corpus statute grants any federal judge 'before whom a *habeas corpus proceeding is pending*' power to stay a state-court action 'for any matter involved in the habeas corpus proceeding.'" Id. (quoting 28 U.S.C. § 2251). Section 2251 is the statute under which the Petitioner should and, indeed, has sought injunctive relief. Section 2283 does not independently authorize the issuance of injunctive relief in a habeas case.

For this reason, the State respectfully requests that this Court deny Petitioner's Motion For Emergency Injunctive Relief.

## IV. CONCLUSION

For all of these reasons discussed above, the State respectfully requests that this Court deny Petitioner's Motion To Set Bail Or Grant Petitioner's Release To Home Incarceration, Petitioner's Motion For Immediate Stay Of Execution Of Rhode Island Governor Donald L. Carcieri's Rendition Warrant, and Petitioner's Motion For Emergency Injunctive Relief.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Christopher R. Bush

**CHRISTOPHER R. BUSH, #5411**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: March 9, 2007

## Certificate of Service

Pursuant to AP 10 of this Court, I hereby certify that on March 9, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I caused a copy of this Objection to be sent to the following by first class mail on March 9, 2007:

Michael Keselica
A.C.I.
P.O. Box 8249
Cranston, RI 02920

/s/ Christopher R. Bush